In the Matter of the Petition of John
GAUS, Jr., and Joanne Gaus to
adopt N.N.G.

No. C5–97–2271.

Court of Appeals of Minnesota.

June 2, 1998.

Review Denied July 30, 1998.

Cathryn Young Middlebrook, Legal Assistance to Minnesota Prisoners, Sean R. Simpson, Certified Student Attorney, Minneapolis, for appellant.

Robert N. Roningen, Duluth, for respondent John Gaus, Jr.

Considered and decided by CRIPPEN, P.J., and HARTEN and FOLEY,* JJ.

## OPINION

HARTEN, Judge.

Appellant Aaron Bishop Beard, who was not given parental notice that the maternal

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

grandparents of a child he claims is his were adopting the child, challenges the denial of his motion to vacate the adoption. Beard argues he was entitled to parental notice because he substantially complied with statutory requirements and because the lack of notice violated his due process rights. We affirm.

## FACTS

On January 5, 1996, N.N.G. was born. His mother was Kelly Jean Smith. Beard claims that he and Smith were living together when N.N.G. was conceived, and that he is the child's father.[1] Prior to N.N.G.'s birth, Beard was arrested and incarcerated. He was later convicted and sentenced to 60 months in prison.

Beard claims that in March 1996, he filled out a parentage affidavit and had it notarized. He maintains that he gave the form to Smith to complete and file with the Minnesota Department of Health. He also claims that Smith and N.N.G. visited him regularly in prison and that he intended to live with them when he was released.

On August 13, 1996, Smith died. Two days later, Beard spoke with a Hennepin County social worker. The social worker informed Beard that no parentage form had been filed. Smith's mother and step-father, respondents Joanne and John Gaus, assumed custody of N.N.G.

On September 19, 1996, Beard sent a letter to the department of health inquiring about his parentage affidavit. The department answered that the form had not been filed and sent Beard a form entitled Affidavit to Retain Parental Rights. On September 30, 1996, Beard signed the affidavit form that he received and sent it to the Division of Vital Statistics; on October 2, 1996, the division received it.

On January 23, 1997, the Gauses adopted N.N.G. without giving Beard notice of the adoption proceedings.

Based on the lack of notice, Beard moved to vacate the adoption. The district court denied Beard's motion because he did not

meet any of the criteria for entitlement to notice under Minn.Stat. § 259.49 (1996). The district court found that Beard presented no evidence to corroborate his claims that he completed a parentage affidavit in March 1996, and he did not file any parentage form for nearly ten months after the birth of N.N.G. The district court concluded that Beard did not substantially comply with statutory requirements and therefore was not entitled to notice of the adoption.

## ISSUES

1. Did Beard substantially comply with statutory requirements that entitled him to notice of adoption proceedings?

2. Did the lack of notice violate Beard's constitutional due process rights?

## ANALYSIS

■ Whether a biological father is entitled to notice of adoption involves statutory construction. *In re C.M.A.,* 557 N.W.2d 353, 356 (Minn.App.1996), *review denied* (Minn. Apr. 15, 1997). Interpretation of a statute is a question of law, subject to de novo review. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn. 1985).

### 1. Substantial Compliance

■ Notice of an adoption hearing shall be given to a person if:

(a) The person's name appears on the child's birth certificate, as a parent, or

(b) The person has substantially supported the child, or

(c) The person either was married to the person designated on the birth certificate as the natural mother within 325 days before the child's birth or married that person within the ten days after the child's birth, or

(d) The person is openly living with the child or the person designated on the birth certificate as the natural mother of the child, or both, or

---

1. The grandparent adoption petitioners have never conceded that Beard is the child's biological father. For purposes of this opinion, we will assume that he is.

(e) The person has been adjudicated the child's parent, or

(f) The person has filed an affidavit pursuant to section 259.51.

Minn.Stat. § 259.49 (1996). Beard admits he does not fit within subsections (a) through (e). He argues that he is entitled to notice under subsection (f) because he filed an affidavit pursuant to section 259.51. Minn.Stat. § 259.51 provides:

Any person not entitled to notice under section 259.49, shall lose parental rights and not be entitled to notice at termination, adoption, or other proceedings affecting the child, unless within 90 days of the child's birth or within 60 days of the child's placement with prospective adoptive parents, whichever is sooner, that person gives to the division of vital statistics of the Minnesota department of health an affidavit stating intention to retain parental rights.

Minn.Stat. § 259.51, subd. 1 (1996).

Passage of ninety days after the birth of N.N.G. in January 1996 occurred before passage of 60 days after N.N.G.'s placement with the Gauses in August 1996. Therefore, under section 259.51, Beard should have filed by April 1996 his parentage affidavit. His affidavit was not filed until October 2, 1996, well beyond the 90–day limit. Accordingly, Beard did not comply with the timing requirements of section 259.51.

We have held that strict compliance with the affidavit filing requirements of section 259.51 is not required—substantial compliance is sufficient. *C.M.A.*, 557 N.W.2d at 357. But while we recognize the doctrine of substantial compliance, in only one case have we found substantial compliance. *In re Welfare of A.M.P.*, 507 N.W.2d 616 (Minn.App. 1993).

In *A.M.P.*, the biological father signed and filed with the county, within two months of the child's birth, a parentage declaration form. 507 N.W.2d at 620. But the form was not filed with the appropriate state department until 92 days after the birth and 70 days after the child's placement with the adoptive parents. *Id.* at 621. We held that although technically the filing was ten days late, the declaration should be considered timely because the father had substantially complied with the statute. We reasoned that the father had submitted the declaration within the required time, the county acknowledged that he had complied with the statute, and the father had no reason to believe the declaration had not been timely filed with the division of vital statistics. *Id.*

In the instant case, however, there is no evidence that the late filing was the fault of the government. Beard does not claim that Smith filed the parentage affidavit, but the government lost it. Instead, the affidavit never was filed. In *A.M.P.*, the proper filing occurred ten days late. Here, filing occurred six months late—nine months after the birth of the child. Also, Beard did not file an affidavit until six weeks after he learned that his parentage affidavit was not on file.

Beard apparently filled out a parentage affidavit and gave it to Smith anticipating that she would file it. He did not undertake to confirm the filing until August, five months after he claims to have executed it, and after Smith had died. For better or worse, Beard chose to take only initial steps toward meeting the statutory requirements and then turned over the process to another person to complete. There is no showing that Beard was unable to file a parentage affidavit within the time limit. Although he was incarcerated, he did manage to obtain necessary forms and file an affidavit in October 1996. We conclude that Beard did not substantially comply with the statutory timing requirements.

## 2. Due Process

Beard argues that the failure to give him notice of the adoption proceeding violates due process of law. He does not argue that Minn.Stat. § 259.49 is unconstitutional on its face; he argues that it is unconstitutional as applied to the facts of this case.

When procedural due process is at issue, we apply a three-part balancing test. *In re Conservatorship of Foster*, 547 N.W.2d 81, 85 (Minn.1996). We weigh (1) the private interest at stake, (2) the governmental interest, and (3) the availability of additional pro-

cedural safeguards. *Id.* The interest at stake for Beard is his relationship with his son. And the state has an interest in completing adoption proceedings efficiently, so that quick and permanent placement is provided to the child and administrative burdens are minimized. Minn.Stat. § 259.49 adequately balances these interests and mandates notice to six classes of parents. In deciding if the statute is unconstitutional as applied here we must consider whether the particular facts of the case render the statutory process constitutionally inadequate.

Beard argues that his case is unique because usually a child is adopted shortly after birth, and the statute does not contemplate the adoption arising eight months after the birth. Beard lists three factors to show how his situation is outside the intended scope of the statute. First, he was incarcerated when N.N.G. was born and therefore was helpless to ensure that he was listed on the birth certificate. Second, he had a relationship with N.N.G. and would have been living with Smith and N.N.G. if he had not been incarcerated. Third, the adoption only became a consideration after Smith's sudden and unexpected death; it was too late for Beard to file his affidavit. Beard argues that the statute was created to protect fathers who are involved in the lives of their children, and this is such a situation.

In *Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), the United States Supreme Court considered whether a New York statute substantially similar to Minn.Stat. § 259.49 violated due process facially or as applied. In *Lehr*, the father claimed that he had due process and equal protection rights to notice before his child was adopted. *Id.* at 250, 103 S.Ct. at 2987. Even if the statute was facially constitutional, the father argued that it was unconstitutional as applied because he had begun a paternity action before the adoption took place. *Id.* at 264–65, 103 S.Ct. at 2995. The Supreme Court stated that the father's argument

> amounts to nothing more than an indirect attack on the notice provisions of the New York statute. The legitimate state interests in facilitating the adoption of young children and having the adoption proceed-

ing completed expeditiously that underlie the entire statutory scheme also justify a trial judge's determination to require all interested parties to adhere precisely to the procedural requirements of the statute. The Constitution does not require a trial judge or a litigant to give special notice to nonparties who are presumptively capable of asserting and protecting their own rights.

*Id.* at 265, 103 S.Ct. at 2995.

We understand that Beard's situation is not typical and that he asserts an intention to have a relationship with N.N.G. Nonetheless, we do not agree that here the application of Minn.Stat. § 259.49 is unconstitutional. The statute requires only that parents complete a minimal step to protect their parental rights. Although Beard's incarceration arguably may have prevented him from living with N.N.G, supporting N.N.G., or ensuring that he was listed on the birth certificate, it did not disable him from timely filing his parentage affidavit. In October, he accomplished the filing of an affidavit although he was still incarcerated. He does not argue that he was denied access to a phone, could not write a letter, could not contact the appropriate agency, or was denied legal assistance.

Because there is no evidence in the record to show that Beard was unable to file a timely parentage affidavit, we conclude that Beard was afforded all the process that was due under the statute. There are no facts showing that Beard is entitled to process beyond that provided in the statute. As in *Lehr*, Beard was capable of protecting his interest. Due process does not entitle him to special notice.

### DECISION

The district court lawfully denied Beard's motion to vacate the adoption. Beard did not substantially comply with statutory requirements to entitle him to notice of adoption proceedings, and the lack of notice did not offend his due process rights.

**Affirmed.**