*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0497**

In re: the Petition of K. P. W. and J. L. H. to Adopt S. Q.-B. W., a Minor Child.

**Filed November 2, 2015
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-JV-FA-13-29

Lucas J.M. Dawson, Lubov Anderson, LLC, Golden Valley, Minnesota (for appellant father)

Jody Ollyver DeSmidt, Walling, Berg & Debele, P.A., Minneapolis, Minnesota (for respondent adoption petitioners)

David C. Gapen, Gapen, Larson & Johnson, LLC, Minneapolis, Minnesota (for respondent mother)

Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and Minge, Judge.[*]

## U N P U B L I S H E D   O P I N I O N

**REILLY**, Judge

Appellant-father E.A.K. challenges the petition of respondents K.P.W. and J.L.H. to adopt minor-child S.Q.-B.W., arguing that the district court erred in determining that he was not entitled to notice of the adoption and further arguing that portions of the

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

adoption statute unconstitutionally deprive appellant of due process of law. Because the record supports the district court's grant of the adoption petition and the contested sections of the adoption statute are not unconstitutional, we affirm.

## FACTS

Appellant-father E.A.K. and respondent-mother E.M.F. are the biological parents of a minor child born in October 2011. Appellant is not listed on the child's birth certificate. On October 24, 2011, appellant and E.M.F. signed a Recognition of Parentage form (ROP) and the hospital submitted it to the Minnesota Department of Health. The ROP contained an error and it was rejected. The state returned the ROP to E.M.F., and did not notify father of the ROP's rejection. Because the ROP was not properly filed with the state, appellant was not added to the child's birth record. Appellant last saw the child in July 2012. In August 2012, E.M.F. voluntarily placed the child for adoption. Appellant was made aware of E.M.F.'s intent to place the child for adoption in August 2012. The child was placed in the care of the petitioners in October 2012 and has remained in their exclusive care since that time. In November 2012, appellant registered with the Minnesota Fathers' Adoption Registry (FAR), over one year after the child's birth. In December 2012, appellant filed a paternity action.

On February 14, 2013, petitioners filed a petition to adopt the child. Appellant moved to dismiss the adoption petition and intervene as a party. In July 2013, the district court dismissed the adoption petition on the "sole basis" that a valid ROP existed, and declined to address appellant's constitutional arguments. Petitioners moved for a stay pending appeal, which the district court granted. Petitioners thereafter appealed the

2

dismissal of their adoption petition. On March 3, 2014, this court reversed the district court's dismissal of the adoption petition, finding that "the juvenile court erred in determining that the rejected ROP document is sufficient to create a valid ROP." *In re K.P.W.*, No. A13-1754, 2014 WL 802557, at *3 (Minn. App. Mar. 3, 2014), *review denied* (May 20, 2014). We determined that because the state rejected the ROP, "there was no filing and registration of the ROP document to create a valid ROP." *Id.* We remanded to the district court for consideration of appellant's motion to intervene and his constitutional challenge. *Id.* at *6.

In November 2014, petitioners filed a motion to finalize the adoption. E.M.F. supported the petition but appellant requested dismissal. The district court issued an order in February 2015, finding that appellant did not spend time with the child, was "completely absent for significant periods of time," and had not provided "substantial support to the child." In terms of financial support, the district court found that appellant sent E.M.F. $200 and helped buy groceries on one occasion, but concluded that the funds provided by appellant for the child's benefit "cannot be construed to be substantial." The district court further found that: (1) appellant was not listed on the child's birth certificate, (2) no one had been adjudicated to be the child's father, (3) no putative father had filed a paternity action within 30 days of the child's birth, and (4) no putative father had filed with FAR within 30 days of the child's birth. The district court concluded that appellant was not an adjudicated father or "a party whose consent is necessary to allow the adoption to proceed." The district court therefore determined that "[p]etitioners may proceed to finalize their adoption . . . as soon as possible without further notice to any

3

individual." The district court granted the adoption petition on March 5, 2015, and this appeal followed.

## DECISION

Appellant raises three arguments on appeal. First, appellant claims that the district court erred by determining that he was not entitled to notice of the adoption petition and his consent was not required for the adoption to proceed. Second, appellant argues that the district court erred by determining that he failed to timely register under FAR. Lastly, appellant claims that if he was not entitled to notice of the adoption, then the ROP statute, Minn. Stat. § 257.75 (2014), and related provisions of the adoption statute, Minn. Stat. § 259.49, subd. 7 (2014), are unconstitutional because they deprived him of due process of law. We address each argument in turn.

**Standard of Review**

Appellant's challenge raises mixed questions of law and fact. The supreme court describes a mixed question of law and fact "as one that requires an appellate court to apply the controlling legal standard to historical facts as determined by the trial court." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 804 (Minn. 2013) (citation omitted). Findings of fact are reviewed for clear error. *In re Welfare of Child of D.L.D.*, 865 N.W.2d 315, 321-22 (Minn. App. 2015), *review denied* (July 20, 2015). "A finding is clearly erroneous only if there is no reasonable evidence to support the finding or when an appellate court is left with the definite and firm conviction that a mistake occurred." *Id.* at 322 (citation omitted). However, the interpretation and construction of statutes are questions of law reviewed de novo. *Lewis-Miller v. Ross*, 710 N.W.2d 565, 568 (Minn.

4

2006) (citation omitted). "Whether a statute violates the Constitution is a question that we review de novo." *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 131 (Minn. 2014) (citation omitted).

## I.

Appellant argues that the district court erred by ruling that he was not entitled to notice of the adoption petition and by failing to obtain his consent to the adoption. Minnesota statute articulates that "[n]o child shall be adopted without the consent of the child's parents" who are entitled to notice. Minn. Stat. § 259.24, subd. 1(a) (2014). Notice of a hearing for an adoption petition must be given to a child's parent if:

> (1) the person's name appears on the child's birth record, as a parent;
>
> (2) the person has substantially supported the child;
>
> (3) the person either was married to the person designated on the birth record as the natural mother within the 325 days before the child's birth or married that person within the ten days after the child's birth;
>
> (4) the person is openly living with the child or the person designated on the birth record as the natural mother of the child, or both;
>
> (5) the person has been adjudicated the child's parent;
>
> (6) the person has filed a paternity action within 30 days after the child's birth and the action is still pending;
>
> (7) the person and the mother of the child have signed a [ROP] which has not been revoked or vacated; or
>
> (8) the person: (i) is not entitled to notice under clauses (1) to (7) [and] (ii) has registered with [FAR].

5

Minn. Stat. § 259.49, subd. 1(b)(1)-(8).

The district court addressed each factor and concluded that appellant was not entitled to notice. Because appellant failed to satisfy any of the eight statutory factors entitling him to notice, the district court did not err in its ruling.

**Substantial Support**

Appellant challenges the district court's finding that "[n]o birth father has substantially supported the child." The district court construed the facts in the light most favorable to appellant and determined that, even if appellant sent $200 to the child's mother and bought groceries on one occasion, "the funds provided . . . cannot be construed to be substantial." Appellant faults the district court for basing this finding "solely upon the amounts that [appellant] contributed" and claims the district court should have more broadly considered "emotional, physical, and academic support." But the record reveals that the district court considered nonmonetary factors as well as financial contributions, and found that appellant "did not spend time with the child alone and was completely absent for significant periods of time" and that it was "impossible to conclude that [appellant] provided *substantial* support to the child." The record supports the district court's conclusion that appellant failed to make an adequate showing that he substantially supported the child. Appellant spoke to the child's mother in December 2011 but did not see the child again until April 2012. Appellant saw the child briefly in May 2012 and last saw the child in July 2012. The record does not contain evidence that appellant provided substantial support, either financial or emotional, to the child, and the district court did not err by determining that these brief interactions and minimal financial

6

contributions fail to constitute "substantial support" entitling appellant to notice of the petition.

**Openly Living with Child or Natural Mother**

A child's parent is entitled to notice of an adoption petition if the parent has been "openly living" with the child's mother. Minn. Stat. § 259.49, subd. 1(b)(4). Appellant claims he is entitled to notice because he "made [the child] a part of his family by temporarily residing with Mother and [child], for however brief of a period of time." The district court found that the child "was in the exclusive care of [birth mother] for nearly a year after his birth" and the record supports this finding. The district court did not err in determining that appellant was not "openly living" with the biological mother or child.

**Paternity Action**

A parent who has filed a paternity action within 30 days after the child's birth, and whose action is still pending, is entitled to notice of an adoption petition. Minn. Stat. § 259.49, subd. 1(b)(6). Appellant claims he is entitled to notice because he "is the presumed father" and "received [the child] into his home and openly held [the child] out as his biological child." The district court determined that "[n]o putative father filed a paternity action within 30 days of the child's birth." Appellant filed a paternity action in December 2012, over one year after the child's birth and four months after the child's adoption placement. Appellant's paternity filing falls outside the plain language of the statute and the district court did not err in determining that the putative father did not file a paternity action within 30 days of the child's birth.

**Recognition of Parentage**

A parent is entitled to notice of an adoption petition if there is a valid ROP. Minn. Stat. § 259.49, subd. 1(b)(7). This issue has been extensively litigated in the present case. In October 2011, appellant and E.M.F. signed an ROP but it was rejected by the state and was not considered to be properly filed. The district court originally held that the state improperly rejected the ROP. On appeal, we reversed and remanded concluding that the district court erred in its interpretation of the statutory provisions governing the validity of ROPs. The Minnesota Supreme Court declined further review. The district court stated on remand that "[a]ll issues relative to the Recognition of Parentage have already been resolved previously" and we do not revisit the issue again here, except the constitutional due process consideration discussed in Part III.

**FAR Registration**

A parent is entitled to notice of an adoption petition if he has complied with the provisions of FAR. Minn. Stat. § 259.49, subd. 1(b)(8). The district court noted that appellant "did not register with the Minnesota Fathers' Adoption Registry until November 19, 2012, a period in excess of one year after the child's birth." The record supports the district court's finding and appellant is not entitled to relief under this factor.

**Remaining Factors**

The district court made additional factual findings, including that: (1) other than the birth mother, "no other parent is listed on the child's birth certificate"; (2) that appellant was not married to the birth mother; and (3) that "[n]o one has been adjudicated to be the child's father." *See* Minn. Stat. § 259.49, subds. 1(b)(1), (3), (5). The factual

8

record supports each of these findings and appellant does not contest them on appeal. The district court performed a careful analysis of the statutory factors and determined that appellant's consent was not necessary to proceed with the adoption. We agree, and conclude that the record supports the district court.

## II.

Appellant contends that the district court erred in concluding that he failed to timely register with FAR because such registration was not required. Appellant raises three separate arguments: (1) that FAR does not apply to a child of S.Q.-B.W.'s age; (2) that he was not required to register with FAR; and (3) that if he was required to register with FAR, his failure to timely register is excused on the basis of fraud.

First, appellant claims that FAR does not apply to children over one year of age at the time of the adoption. The statute does not contain an age limitation. If the legislature intended to limit FAR to adoptions of children over one year of age, we must assume it would have done so by inserting language to that effect into the statute. It is not the function of this court to "supply that which the legislature purposely omits or inadvertently overlooks." *State v. Wenthe*, 865 N.W.2d 293, 304 (Minn. 2015). There is no basis for this court to interpret FAR as narrowly as appellant suggests.

Next, appellant argues that because he signed an ROP, he was not required to also register with FAR. The district court correctly noted that appellant "had the power and authority to protect his interests in the child completely separate and apart from . . . signing the ROP" by registering with FAR "within the time frame established by

9

statute."[1]  FAR provides a mechanism for identifying putative fathers and giving them notice of adoption proceedings.  *Heidbreder v. Carton*, 645 N.W.2d 355, 369 (Minn. 2002) (citing Minn. Stat. § 259.52, subd. 1).  It is designed to balance the putative father's interests with those of the child, the birth mother, and the adoptive parents and promote the "permanence and stability" of the child.  *Id*. at 369-70.  While the law does not require appellant to both register with FAR and sign an ROP, registering with FAR in a timely manner would have protected his interests.  *Id*.

Lastly, appellant argues that if he was required to register with FAR, he is "excused from timely filing."  This argument is unavailing.  A putative father must register with FAR within 30 days after a child's birth.  Minn. Stat. § 259.52, subd. 7.  A putative father who fails to timely register under subdivision 7 "is considered to have waived and surrendered any right to notice of any hearing in any judicial proceeding for adoption of the child, and consent of that person to the adoption of the child is not required[.]"  *Id*., subd. 8.  An exception exists if the putative father can prove by clear and convincing evidence that: "(i) it was not possible for him to register within the period of time specified in subdivision 7; (ii) his failure to register was through no fault of his own; and (iii) he registered within ten days after it became possible for him to file."  *Id*.

Appellant claims it was impossible to register within the statutory time period because he was not notified that the ROP had been returned, and cites to *Heidbreder* for

---

[1] The district court "fe[lt] compelled to note" that appellant had the "power and authority" to independently protect his interests in the child by timely registering with FAR, requesting a copy of the child's amended birth certificate from the state to ensure that it had been properly amended to reflect that appellant was the father, or by initiating a paternity action within the appropriate time frame.

the proposition that fraud or fraudulent nondisclosure may excuse a putative father's untimely registration. 645 N.W.2d at 379. The *Heidbreder* court stated that:

> [T]here is no need to impose such a duty on the birth mother in the interest of protecting a putative father's interests because the legislature has provided a means for the putative father to assert his interest in his child independent of the birth mother through registration with [FAR].

645 N.W.2d at 368. Although appellant argues that the birth mother and the state had a fiduciary obligation to inform him of the ROP's rejection, the record indicates that mother reported that rejection to father's family and that father was aware of that information. The statute does not preclude notification of father. It is simply silent in that regard. Here, the record indicates that the department of health had father's address and such notification was possible and perhaps prudent. In light of mother's communication, we do not need to reach the question of whether the state's failure to notify was constitutionally fatal.

Moreover, appellant has not established that he is the victim of fraud. Appellant learned in August 2012 that the ROP was ineffective but failed to register with FAR until November 2012, well beyond the ten-day statutory time period. The district court determined that:

> [Appellant] did not prove that it was not possible for him to register within the period of time specified in Minnesota Statute § 259.52. Even if the Court assumes that it was impossible for [appellant] to register within the 30 days after the child's birth, [appellant] was made aware of the birth mother's intent to place the child for adoption around August 2012. [Appellant] did not register with [FAR] for well over two months after he discovered birth mother's intent to place the child for adoption.

11

The evidentiary record supports the district court's ruling. Appellant knew by August 2012 that he was not listed on the birth certificate, that E.M.F. intended to place the child for adoption, and that the ROP was ineffective. Appellant neglected to take action in a timely manner. Indeed, the district court noted that appellant "did not take any action to claim paternity or an interest in his child for almost a year." Appellant has not demonstrated by clear and convincing evidence that it was impossible for him to register with FAR within the statutory time frame.

## III.

Appellant claims the ROP statute is unconstitutional because it fails to protect a father's due-process rights. The United States and Minnesota Constitutions prohibit the government from depriving an individual of life, liberty, or property without due process of law. U.S. Const. amend. XIV § 1; Minn. Const. Art. 1, § 7. Whether the state has violated appellant's due-process rights is a question of law subject to de novo review. *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012) (citation omitted).

A reviewing court conducts a two-step analysis in a due-process challenge by (1) "identify[ing] whether the government has deprived the individual of a protected life, liberty, or property interest," and, if the government's actions have deprived an individual of a protected interest, (2) determining "whether the procedures followed by the government were constitutionally sufficient." *Id*. (citations and quotations omitted). Under this second step, the court applies a three-part balancing test weighing "(1) the private interest at stake, (2) the governmental interest, and (3) the availability of

additional procedural safeguards." *Petition of Gaus*, 578 N.W.2d 405, 407-08 (Minn. App. 1998) (citation omitted).

A.

The first step is to determine whether the rejection of the ROP deprived appellant of a protected life, liberty, or property interest. "In general, a parent has a liberty interest in the care, custody, and control of his or her children." *Rew v. Bergstrom*, 845 N.W.2d 764, 785 (Minn. 2014) (citations omitted). However, "[p]arental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." *Lehr v. Robertson*, 463 U.S. 248, 260, 103 S. Ct. 2985, 2992 (1983) (quotation omitted). The record is replete with evidence that appellant failed to establish "any custodial, personal, or financial relationship" with the child. *Id.*, 463 U.S. at 249, 103 S. Ct. at 2987. Appellant did not establish a substantial relationship with his child, regardless of the status of the ROP.

B.

The second step is a procedural due-process analysis to determine whether the procedures followed by the government were constitutionally sufficient to limit father's liberty interest under a three-part balancing test. *Sawh*, 823 N.W.2d 627 at 633. Under the first factor, the court reviews the private interest affected by the state's action. *State v. Krause*, 817 N.W.2d 136, 145 (Minn. 2012). As the district court recognized, the private interest is the "undisputed parent and child relationship." The district court stated that a "parent's interest in their child is paramount," and a parent's interest in the "care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty

13

interests" recognized in United States jurisprudence. *See, e.g.*, *SooHoo v. Johnson*, 731 N.W.2d 815, 825 (Minn. 2007) ("A parent's right to make decisions concerning the care, custody, and control of his or her children is a protected fundamental right."). Appellant had a substantive private interest at stake. *See Rew*, 845 N.W.2d at 786 (stating that a parent faced with the possibility of a "deprivation of an interest in the care, custody, and control of his children" has demonstrated a substantial private interest).

Under the second factor, we review the governmental interests involved. The state has an interest in completing adoption proceedings efficiently "so that quick and permanent placement is provided to the child and administrative burdens are minimized." *Gaus*, 578 N.W.2d at 408. As the *Heidbreder* court recognized, a putative father does not have an "an infinite amount of time" to claim an interest in a child. 645 N.W.2d at 370. At some point, the father's interest in raising his child "gives way to the child's interest in having a permanent and stable home." *Id*. Here, appellant has not seen his child since July 2012. The child has been in the exclusive care of petitioners from October 2012 to the present date. The impact of removing the child from his adoptive parents at this point would be severe. Section 259.49, discussed above, adequately balances appellant's interests with the state's interest. *Gaus*, 578 N.W.2d at 408.

Under the final factor, we review the "the risk of an erroneous deprivation of a protected interest under current procedures and the probable value, if any, of additional safeguards." *Rew*, 845 N.W.2d at 786. The district court found that the "risk of the erroneous deprivation in this case resulted in Mother being able to place the child for adoption without any notice to the Father." The district court found that the probable

value of additional safeguards, such as sending a copy of the rejected ROP directly to father, "would have been significant" and would "avoid future protracted litigation." In our de novo review, we note that despite the failure of the department of health to notify father that the ROP was rejected and despite not being accorded party status, the district court in this case fully and carefully considered father's involvement with S.Q.-B.W. and the rights and interests of mother and S.Q.-B.W. in this adoption proceeding. We conclude that despite any unfortunate gap or slippage in the department of health's procedure, the district court's thorough process accorded father adequate procedural consideration of his interest. Thus, we hold that section 259.49 is not unconstitutional on its face or as applied to the facts of appellant's case. *See Gaus*, 578 N.W.2d at 407-08 (holding that section 259.49 was not unconstitutional where statute "requires only that parents complete a minimal step to protect their parental rights").

In sum, appellant was afforded due process under the statute and is not entitled to any additional protections.

**Affirmed.**