**In re the Matter of A.R.M., Minor Child.**

**No. C4–99–1553.**

Court of Appeals of Minnesota.

May 30, 2000.

Richard A. Emerick, Burnsville, for appellant Mary L. Mertz.

Thomas John Harbinson, Scott County Attorney, Susan K. McNellis, Assistant County Attorney, Shakopee, for respondent Scott County.

Bruce Ronald Rubbelke, Blaine, for respondent Robert J. Mahowald.

Miriam J. Wolf, Morris & Wolf, Shakopee, for Guardian Ad Litem.

Considered and decided by TOUSSAINT, Chief Judge, PETERSON, Judge, and FOLEY,* Judge.

## OPINION

TOUSSAINT, Chief Judge

The 1990 judgment dissolving the marriage of appellant-mother Mary Mertz and respondent-father Robert Mahowald awarded mother sole physical custody of the parties' child. In February 1997, mother voluntarily placed the child in foster care. Thereafter, in June, the child was adjudicated in need of protection or services (CHIPS). Later, efforts by father to obtain custody of the child under chapter 518 and efforts by the county to place the child with father in the CHIPS proceeding were unsuccessful. In Aug. 1999, however, the county's third attempt to place the child with father was granted. Mother appeals, alleging the district court erred in (a) awarding the father physical custody in a CHIPS proceeding under Minn.Stat. § 260C.201, subd. 11(e)(1) (Supp.1999) rather than by modifying the dissolution judgment under Minn.Stat. § 518.18 (1998); (b) refusing to allow mother to present evidence on the child's best interests at a hearing addressing whether the county could cease reunifica-

tion efforts; and (c) in finding the county's reunification efforts reasonable.

## FACTS

The 1990 judgment dissolving the parents' marriage awarded mother and father joint legal custody of their child and placed sole physical custody in mother. The child began receiving assistance from the county in 1994. Mother's psychological and chemical dependency problems, combined with the child's behavioral problems, caused mother to place the child in foster care in February 1997. In March, a guardian ad litem was appointed for the child and the county filed a CHIPS petition alleging the child lacked proper parental care.

After an initial hearing, the district court transferred the child's temporary custody to the county and ordered the child to remain in foster care while the county looked for a relative to care for him. By agreement of all parties, on April 11, 1997, the child was placed with his paternal grandparents. Also in April, mother entered an inpatient treatment program, which she later completed.

On June 5, 1997, mother admitted the allegations in the CHIPS petition and the child was adjudicated CHIPS. The county then prepared, and the court adopted, a placement plan, which required mother to complete chemical dependency aftercare, cooperate with mental health services, participate in parenting instruction, and remain sober.

Meanwhile, in the dissolution file, father's motion for physical custody of the child, was denied in August, 1997. Shortly thereafter, the child returned to mother's home. The child's behavioral problems, which had improved while he was in foster care, resumed and, in October and November, the child's behavior worsened. Because mother did not consistently meet with human services workers and was gen-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. Art. VI, § 10.

erally unsuccessful in meeting the child's parenting needs, both the guardian ad litem and the child protection worker recommended that the child be placed with father and his wife (also a respondent in this proceeding).

At a November review hearing, the county requested transfer of custody to father. The court placed the child out of mother's home pending an evidentiary hearing. At that hearing, evidence submitted included a letter from the child's mental health worker stating mother often failed to take advantage of the services offered by the county, that the child flourished in foster care, and that mother did not meet the child's needs. In December, the district court placed the child in father's custody.

At a March 1998 review hearing, reports from the guardian ad litem, the child protection worker, and the child's mental health worker recommended permanently placing the child with father. Mother's chemical dependency and mental health counselors reported that she had made "significant" and "remarkable" progress that year. The court ordered the child to remain with father until further order of the court, reviewed father's dissolution file motion for permanent physical custody, and scheduled a joint hearing on all remaining issues in the CHIPS and dissolution files.

After an April hearing, the district court issued a joint order in both actions, stating, among other things, that father's motion to modify custody had been dismissed by agreement and the county's motion to place the child with father was denied. The accompanying memorandum stated that the county's motion had been denied as premature because the child had not been out of mother's home for a statutorily required 12–month period. In July, mother, father, and father's wife signed a "Review of Service" plan, requiring continued monthly meetings between mother and the human services workers and cooperation among all three parents in a co-parenting program.

In October, affidavits of the child protection worker and the child's mental health worker indicated the child would benefit from being placed with father and the county moved to place the child with father under Minn.Stat. § 260.191, subd. 3b (1998). The district court denied the motion, ruling that (a) Minn.Stat. § 260.191, subd. 3b(c)(1), which allows placement with a *relative*, did not apply to a motion seeking placement with a non-custodial *parent*, particularly where the parent had already made an unsuccessful custody claim in the dissolution file; (b) the motion would properly be brought by father under the conditions for modification of a custody order under Minn.Stat. § 518.18 (1998); and (c) the county could amend its motion to seek permission to cease efforts to reunify mother and the child.

A hearing on the county's amended motion to cease reunification efforts occurred in January 1999. Because there was no placement or custody issue pending, the district court denied mother's attempts to introduce evidence regarding the parental fitness of father and his wife. The district court found (a) mother had not utilized many of the services offered by the county; (b) the child had "special needs;" (c) the county had used "all available resources" to try to reunite mother and the child; (d) the child's special needs would not be met if he were to be returned to mother; (e) the county had made "reasonable efforts" to reunite mother and the child; (f) those efforts had failed; and (g) it was in the child's best interests not to be returned to mother's custody. The district court maintained the CHIPS adjudication and ordered the child to remain with father, without efforts to reunite the child with mother.

In July, the county sought a dispositional order placing permanent custody of the child with father. Mother moved for, among other things, a return of custody to her, appointment of an attorney for the

child, and attorney fees. Mother had also sought reconsideration of the court's order (under Minn. R. Gen. Pract. 115.11) regarding a stop to reunification efforts, and removal of the language stating it was in the child's best interests to not return to mother.

The district court's August 11, 1999 order (a) noted the child's improvement while in father's custody; (b) noted a lack of evidence indicating mother could function as the child's custodian; (c) found it "clear" mother lacked the ability to provide the stability and continuity the child required for his continued improvement; (d) found it "quite clear that [mother] fails to comprehend [the child's] special needs and would not have a clue as to how to address his issues"; (e) expressed "great concern" that mother continued to put the child in the middle of the CHIPS and custody conflicts after repeatedly being told how destructive that was to the child; (f) acknowledged the child's mixed feelings about his custodial preference; and (g) stated that even if the child expressed a clear preference, the court would not ignore the opinions of the experts who attributed the child's steady progress to the structure and stability of his father's household and who deemed those characteristics crucial to the child's continued improvement. The district court ruled that (a) the county had made reasonable efforts to reunify mother and the child; (b) those efforts had failed; (c) the conditions leading to the CHIPS adjudication had not been corrected and were unlikely to be corrected in the next six months; (d) the child's best interests would be served by placing permanent custody with his father; (e) mother's motions were denied; (f) the child was to be permanently placed with

father; and (g) the CHIPS petition was dismissed.

## ISSUES

1. Did the district court err by placing the child with father according to a child protection statute when mother previously had been awarded custody in the dissolution judgment?

2. Was mother entitled to present evidence on whether permanent placement was in the child's best interests at the hearing addressing whether the county could cease reunification efforts?

3. Does the record support the district court's finding that the county's reunification efforts were reasonable?

4. Is mother entitled to attorney fees?

## ANALYSIS

### I.

 Noting she was awarded physical custody of the child in the dissolution judgment and that the court's order of August 11, 1999, which invokes Minn.Stat. § 260.191, subd. 3(b) (1998),[1] requires the child to live with father, mother argues that (a) the district court misapplied the law by modifying the dissolution judgment without applying Minn.Stat. § 518.18 (1998), which is the traditional method of modifying custody in a dissolution context; and (b) father did not show the changed circumstances and endangerment required to modify custody under Minn.Stat. § 518.18(d)(iii). Whether the district court correctly applied the law is a legal question and we review it de novo.

---

1. While the county made its motion on July 8, 1999, under Minn.Stat. § 260.191, subd. 3b, in 1999, the relevant provisions of chapter 260 were replaced by chapter 260C. See 1999 Minn. Laws ch. 139, art. 3 (replacing juvenile protection provisions of chapter 260 with chapter 260C). Chapter 260C clarified and reorganized the juvenile protection law, it was not a substantive change in that law.

1999 Minn. Laws, ch. 139, art. 4, § 1. Because chapters 260C made no substantive changes in the law and because it took effect on August 1, 1999, before the district court's order was issued, we analyze this issue under the language of chapter 260C. See Minn.Stat. § 645.02 (1998) (providing that, unless otherwise specified, a law is effective on August 1st following its enactment).

*Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

### A. Chapter 518

The marriage dissolution statute, chapter 518, explicitly contemplates that custody determinations may be made in CHIPS proceedings. *See* Minn.Stat. § 518.003, subd. 3(f), (g) (1998) (defining "custody determination" as court decision providing for custody of child and "custody proceeding" to include proceedings in which "custody determination" is made, including "proceedings involving children who are in need of protection or services" (respectively)).

### B. Chapter 260C

■ The statute addressing children in foster care states that if a child cannot be returned to the home of the parent from whom the child was removed, the county "may petition on behalf of a noncustodial parent to establish *legal custody* with that parent under section 260C.201, subdivision, 11 [ (Supp.1999) ]." Minn.Stat. § 260C.212, subd.1 (d) (Supp.1999) (emphasis added). Noting that the statute allows the county to petition to establish "legal custody" with father, mother alleges that the county's petition here was improper because it sought to have the child physically live with father. Mother's argument is apparently based on the distinction between "legal custody" and "physical custody" in chapter 518. *Compare* Minn.Stat. § 518.003, subd. 3(a) (1998) (defining "legal custody" to be "the right to determine the child's upbringing, including education, health care, and religious training" *with* Minn.Stat. § 518.003, subd. 3(c) (1998) (defining "physical custody and residence" to be "the routine daily care and control and the residence of the child"). Chapter 260C however, is the chapter under which the county filed its petition and chapter 260C defines "legal custody" as "the right to the *care, custody, and control* of a child who has been taken from a parent by the court

* * *." Minn.Stat. § 260C.007, subd. 10 (Supp.1999) (emphasis added). While chapter 260C does not define "physical custody," the breadth of its definition of "legal custody" encompasses the core concepts of what chapter 518 defines as "physical custody." Therefore, the county's placement petition was not defective because Minn.Stat. § 260C.212, subd. 1(d) mentions only "legal custody."

■ Because the county's petition was not defective, the question revolves around the applicability of Minn.Stat. § 260C.201, subd. 11. Under that provision, the district court must "conduct a hearing to determine the permanent status of a child not later than 12 months after the child is placed out of the home of the parent." Minn.Stat. § 260C.201, subd. 11(a). At that point, unless the county is recommending that the child be returned to the custodial parent(s), the county must "establish the basis for the juvenile court to order permanent placement of the child." Minn.Stat. § 260C.201, subd. 11(b). After the hearing, the district court must either return the child home or put the child in "a permanent placement in the child's best interests." Minn.Stat. § 260C.201, subd. 11(c). If the district court determines that returning the child home is not in the child's best interests, the court "must" order one of certain statutorily listed dispositions, including "permanent legal and physical custody to a *relative.*" Minn.Stat. § 260C.201, subd. 11(e) (emphasis added). The definition of "relative" includes "parent." Minn.Stat. § 260C.007, subd. 14 (Supp.1999). And the definition of "parent" would include father here. Minn.Stat. § 260C.007, subd. 12 (Supp.1999). Also, orders issued under Minn.Stat. § 260C.201, subd. 11 which transfer "permanent legal and physical custody" of a child to a relative "shall follow the standards and procedures applicable under this chapter, chapter 260, *or chapter 518*" and "*must* be filed with the family court." Minn.Stat. § 260C.201, subd. 11(e)(1) (emphasis added). Thus, the pre-existing cus-

tody award in the dissolution judgment does not preclude use of Minn.Stat. § 260C.201, subd. 11 to place custody with father.

## C. Application of Chapter 260C

Here, the record shows that the proper procedure for making a permanent placement under section 260C was followed. As authorized by Minn.Stat. § 260C.212, subd. 1(d), the county petitioned on behalf of father to establish custody with father under the permanent placement procedures of Minn.Stat. § 260C.201, subd. 11. Under Minn.Stat. § 260C.201, subd. 11, the district court was required to determine the placement status of the child and the county filed pleadings establishing the basis for an order of permanent placement with father. Following the July 1999 hearing on the motion for permanent placement, the district court ordered a permanent placement with a relative, in this case father, and found that placement in the child's best interests. The record shows that, in reaching its decision, the district court considered the relevant factors and made findings supported by the evidence. *See* Minn.Stat. §§ 260C.201, subd. 11(f), (h) (addressing considerations for permanent placement decision); *see also In re Welfare of A.R.G.-B.,* 551 N.W.2d 256, 262 (Minn.App.1996) (stating question in reviewing permanent placement is whether conditions requiring out-of-home placement have been corrected).

■ Because chapter 518 contemplates custody determinations being made under chapter 260C and because chapter 260C contemplates awarding custody to a child's noncustodial parent, the district court did not misapply the law by using chapter 260C to award father custody of the parties' child. Also, because in applying chapter 260C, the district court made findings supported by the record and ordered a custodial arrangement contemplated by the law, we affirm the placement of the child with father.[2]

## II.

■ Mother alleges she was denied due process of law when, after the January 1999 hearings, the district court ruled that it was in the child's best interests not to be returned to her despite precluding her from presenting evidence on the child's best interests at those hearings. Mother also challenges the district court's best-interests findings.

We initially note that while mother phrases her argument in terms of the child's best interests, the only evidence mother unsuccessfully sought to present at the January hearings addressed the allegedly defective parenting of father and his wife. The only issue before the district court at the January 1999 hearings, however, was whether the county should cease attempts to reunify mother and the child because the reunification efforts were futile. Minn.Stat. § 260.012 (1998). Reunification efforts must be consistent with a child's best interests and may be terminated if the efforts are futile and unreasonable under the circumstances. Minn.Stat.

---

**2.** We reject any implication by mother that affirming the district court here will allow noncustodial parents to systematically circumvent the endangerment standard of Minn. Stat. § 518.18(d)(iii), which is generally required to be satisfied when seeking to modify a dissolution-judgment's custody award. Among other things, obtaining a CHIPS adjudication requires clear and convincing evidence of the relevant allegations. Minn.Stat. § 260C.163, subd. 1 (Supp.1999). Modification of custody under chapter 518, however, requires only a preponderance of the evidence. *Cf. Auge v. Auge,* 334 N.W.2d 393, 399

(Minn.1983) (noting removal of child from state may "effect a modification of custody" and that such removals shall be granted unless party opposing removal "establishes by a preponderance of the evidence that the move is not in the best interests of the child.") Moreover, it is procedurally more complex to obtain a CHIPS adjudication under chapter 260C than to modify custody under chapter 518. Under these circumstances, our ruling will not cause a deluge of litigation seeking to finesse the child-custody modification standard of chapter 518.

§ 260.012(a). Here, the record shows that the district court's "best interest" determination, when paired with its conclusion that efforts at reunification were futile, was made in contemplation of section 260.012(a) and was not, as mother suggests, tantamount to vacating a custody order without providing her with an opportunity to be heard. Rather, the district court refused evidence offered by mother regarding father and his wife because such evidence was not relevant to whether the county's efforts to reunite mother and the child were futile.

The district court heard extensive testimony regarding the county's reunification efforts, and its February 1999 order allowing cessation of those efforts made extensive findings regarding those efforts and mother's failure to take advantage of them. Moreover, mother's claim that she was denied the opportunity to present evidence on the child's best interests is undercut by her subsequent failure to seek an evidentiary hearing when the county sought a permanent placement with father. The district court did not err in limiting evidence at the January 1999 hearings or in making its "best-interests" determination after those hearings.

### III.

■ Mother claims the county failed to make reasonable reunification efforts, arguing the county made no reunification efforts after 1997. Mother claims that, therefore, the CHIPS action should have been dismissed because of the county's noncompliance with this requirement and because the county later exceeded its authority in attempting to remove physical custody from mother and place it with the father. Mother cites no authority for her allegations. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519–20, 187 N.W.2d 133, 135 (1971) (stating assignment of error based on mere assertion and unsupported by argument or authority waived unless error is obvious). Findings in CHIPS proceedings are not

reversed unless clearly erroneous or unsupported by substantial evidence. *In re Welfare of D.N.*, 523 N.W.2d 11, 13 (Minn. App.1994) (*review denied* (Minn. Nov. 29, 1994). This record provides substantial evidence documenting the county's reunification efforts as required by Minn.Stat. § 260.012(a). The evidence supports district court's findings in its February 18, 1999 and August 11, 1999 orders in which it ruled that the county made reasonable, but futile, reunification efforts.

■ Mother also argues that because the guardian ad litem and child protection worker consistently recommended placement with the father after 1997, the county failed to make sufficient reunification efforts. We disagree. The statute requires the district court to ensure the county makes reasonable efforts "to reunite the child with the child's family at the earliest possible time, *consistent with the best interests, safety, and protection of the child.*" Minn.Stat. § 260.012(a) (emphasis added). Because reunification efforts are expressly conditioned on being consistent with the best interests, safety, and protection of the child, the county's failure to directly pursue reunification when it was not in the child's best interests to do so is not a violation of the statute.

### IV.

■ Mother seeks attorney fees for this appeal and a remand for the district court to award fees incurred in earlier proceedings. The district court refused mother's request because mother proceeded with private counsel rather than the public defender for which she qualified. On appeal, mother first raised the fee issues in her reply brief, and that brief makes no legal argument and cites no authority for her position. The fee issues are not properly before us. *See Balder v. Haley*, 399 N.W.2d 77, 80 (Minn.1987) (stating issues not briefed are waived); *McIntire v. State*, 458 N.W.2d 714, 717 n. 2 (Minn.App.1990) (stating arguments not made in appellant's brief may not be revived in a reply brief),

*review denied* (Minn. Sept. 28, 1990); *Schoepke*, 290 Minn. at 519–20, 187 N.W.2d at 135 (stating assignment of error based on mere assertion and unsupported by argument or authority waived unless error is obvious).

■ Mother has since filed a motion for fees citing Minn. R. Juv. P. 63.01, subd. 2(D), which allows payment of fees on appeal if a child's parent or guardian cannot afford the expense. The rule, however, confers no right to circumvent available public defender services in favor of private counsel, and it has never been so interpreted or applied. Moreover, absent a successful challenge to the district court's refusal to award fees to private counsel, we decline to do so here.

## DECISION

The district court did not err in granting father custody of the parties' child under the Minn.Stat. § 260C.201, subd. 11(e)(1) (Supp.1999) or restricting the evidence presented at the January 1999 hearings. Nor did it err in finding the county's reunification efforts to be reasonable. We deny mother's motion for attorney fees on appeal.

**Affirmed; motion denied.**