# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-2106

In the Matter of the Welfare of the Child of: D. L. D. and M. E. F., Parents.

**Filed June 8, 2015**
**Affirmed**
**Schellhas, Judge**

Pipestone County District Court
File No. 59-JV-14-33

Steven R. Forrest, Hedeen, Hughes & Wetering, Worthington, Minnesota (for appellant D.L.D.)

Benjamin Denton, Pipestone, Minnesota (for respondent M.E.F.)

Damian Sandy, Pipestone County Attorney, Pipestone, Minnesota (for respondent Pipestone County)

Carol Morgan, Luverne, Minnesota (guardian ad litem)

Considered and decided by Halbrooks, Presiding Judge; Schellhas, Judge; and Hooten, Judge.

## S Y L L A B U S

A juvenile court may find that a child cannot safely return home even though the factual bases for the conditions preventing the child's return home are not identical to the factual bases for the conditions that led to the child's out-of-home placement.

# OPINION

**SCHELLHAS**, Judge

Appellant seeks reversal of a permanency disposition order transferring permanent legal and physical custody of her child to respondent, the child's father. We affirm.

## FACTS

On July 14, 2008, appellant D.L.D. (mother) gave birth to K.D.D.F. Respondent M.E.F. (father) is the adjudicated father of K.D.D.F. A district court granted mother sole legal and physical custody of K.D.D.F. and, in March 2009, granted father reasonable and liberal parenting time with K.D.D.F. In November 2012, the court granted mother and father joint legal and physical custody of K.D.D.F., with mother's home serving as the child's principal residence.

In March 2014, police executed a search warrant at mother's home, where they found approximately 24 grams of marijuana and numerous prescription medications. The State of Minnesota charged mother with three counts of fifth-degree controlled-substance crime (sale of marijuana).[1] Respondent Pipestone County, through Southwest Health & Human Services (SWHHS), petitioned the juvenile court to adjudicate K.D.D.F. as a child in need of protection or services (CHIPS).[2] Following an emergency protective care hearing, the juvenile court placed K.D.D.F. with father, subject to protective supervision

---

[1] Mother later pleaded guilty to one count of fifth-degree controlled-substance crime (sale of marijuana); the other two counts were dismissed under a plea agreement.

[2] The CHIPS petition also included K.D.D.F.'s two half-sisters, who are not the subject of this appeal.

by SWHHS, and mother stipulated to the juvenile court's CHIPS adjudication of K.D.D.F. as a child whose environment was such as to be injurious or dangerous to her.

In August 2014, father petitioned the juvenile court for a transfer of permanent legal and physical custody of K.D.D.F. to him (permanency petition). Mother denied the allegations of the permanency petition and moved to dismiss the permanency petition for failure to state a prima facie case for transfer of permanent custody. The court ruled that the petition did not state a prima facie case and granted father leave to file an amended petition. A court-appointed guardian ad litem (GAL) for K.D.D.F. filed an informal report, father filed an amended permanency petition, and mother again moved to dismiss for failure to state a prima facie case. The court denied mother's motion to dismiss the amended permanency petition and held an adjudicatory hearing in October 2014. The court heard testimony and argument, received exhibits, and took judicial notice of relevant case files, including the case file for the CHIPS matter (CHIPS file). The GAL filed a second informal report following the hearing, and the court granted father's amended petition, transferring permanent legal and physical custody of K.D.D.F. to father (TLC order).

This appeal follows.

**ISSUES**

I.   Did the juvenile court err by denying mother's motion to dismiss the amended permanency petition?

II.  Did the juvenile court err by transferring permanent legal and physical custody of K.D.D.F. to father?

3

**ANALYSIS**

"The paramount consideration in all juvenile protection proceedings is the health, safety, and best interests of the child." Minn. Stat. § 260C.001, subd. 2(a) (2014). "The laws relating to the juvenile protection proceedings shall be liberally construed to carry out these purposes." *Id.*, subd. 4 (2014). A child "whose . . . environment is such as to be injurious or dangerous to the child" is a "[c]hild in need of protection or services." Minn. Stat. § 260C.007, subd. 6 (2014). "If the court finds that the child is in need of protection or services . . . , it shall enter an order making a[] . . . disposition[] of the case . . . ." Minn. Stat. § 260C.201, subd. 1(a) (2014). One permissible disposition is to "place the child under the protective supervision of the responsible social services agency . . . in the home of a parent of the child under conditions prescribed by the court directed to the correction of the child's need for protection or services." *Id.*, subd. 1(a)(1).

"A permanency or termination of parental rights petition must be filed at or prior to the time the child has been . . . in the care of a . . . nonresident parent for 11 months . . . ." Minn. Stat. § 260C.505(a) (2014).

> At the conclusion of the permanency proceedings, the court shall:
>
> (1) order the child returned to the care of the parent . . . from whom the child was removed; or
> (2) order a permanency disposition under section 260C.515 or termination of parental rights . . . if a permanency disposition order or termination of parental rights is in the child's best interests.

Minn. Stat. § 260C.509 (2014). One available permanency disposition is a grant of "permanent legal and physical custody to a fit and willing relative in the best interests of

4

the child." Minn. Stat. § 260C.515, subd. 4 (2014). Father meets the statutory definition of "relative." *See* Minn. Stat. § 260C.007, subd. 27 (2014) ("'Relative' means a person related to the child by blood, marriage, or adoption . . . .").

## I. The juvenile court did not err by denying mother's motion to dismiss the amended permanency petition.

"Every petition filed with the court in a juvenile protection matter . . . shall contain . . . a statement of facts that, if proven, would support the relief requested in the petition . . . ." Minn. R. Juv. Prot. P. 33.02, subd. 1. "Any party . . . may bring a motion to dismiss the petition," Minn. R. Juv. Prot. P. 15.04, on grounds including the "failure of the petition to state facts which, if proven, establish a prima facie case to support the statutory grounds set forth in the petition," Minn. R. Juv. Prot. P. 15.04(c).

In this case, mother appears to assign error to the juvenile court's denial of her rule 15.04(c) motion to dismiss father's amended permanency petition. We review for abuse of discretion the court's underlying determination that father's petition states a prima facie case for transfer of permanent custody of K.D.D.F. *Cf. Spanier v. Spanier*, 852 N.W.2d 284, 287 (Minn. App. 2014) (stating that "district court's determination as to the existence of a prima facie case for modification [of custody] is reviewed for an abuse of discretion"); *In re Welfare of L.L.P.*, 836 N.W.2d 563, 570 (Minn. App. 2013) (noting that "a relative or foster parent seeking to be an adoptive placement must file a motion and supporting documents that allege a prima facie case that the agency has been unreasonable in failing to make the requested adoptive placement" and stating that "we review the district court's determination of whether [movants] established a prima facie

5

case for abuse of discretion"); *Kulla v. McNulty*, 472 N.W.2d 175, 182–83 (Minn. App. 1991) (reviewing for abuse of discretion district court's determination that third-party petition for visitation with child did not establish prima facie case that visitation would not interfere with relationship between parent and child), *review denied* (Minn. Aug. 29, 1991).

The supreme court has defined a prima facie case as "one that prevails in the absence of evidence invalidating it." *Tousignant v. St. Louis Cnty.*, 615 N.W.2d 53, 59 (Minn. 2000) (quotation omitted); *see also Black's Law Dictionary* 1310 (9th ed. 2009) (defining "prima facie case" as "[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor"). Yet the supreme court also has

> acknowledge[d] that the term "prima facie case" is a legal term of art that does not always carry the same meaning in every context. Rather, the specific quantum and quality of evidence that is necessary to establish a prima facie case may vary depending on the nature of the proceedings, the type of action involved, and the stage of the litigation.

*Braylock v. Jesson*, 819 N.W.2d 585, 590 n.2 (Minn. 2012).

Here, father was required to allege facts in support of a transfer of permanent custody of K.D.D.F. *See* Minn. R. Juv. Prot. P. 33.02, subd. 1 (requiring "a statement of facts that, if proven, would support the relief requested in the petition"); *cf.* Minn. R. Juv. Prot. P. 15.04(c) (providing for dismissal of petition that fails "to state facts which, if proven, establish a prima facie case to support the statutory grounds set forth in the petition"). Father's amended permanency petition alleges that mother subjected K.D.D.F.

6

"to a dangerous and harmful environment" that included K.D.D.F.'s exposure to drugs, to an improperly maintained home, and to possible physical abuse, and that mother used a "deficient parenting style" with K.D.D.F., causing K.D.D.F. to suffer emotional, behavioral, and academic problems. The petition further alleges that "[mother] has not corrected the conditions in the home that led to [K.D.D.F.]'s removal from that home and that to return [K.D.D.F.] to [mother]'s home is not in [K.D.D.F.]'s best interests." Finally, the petition "incorporates by reference" the September 19, 2014 GAL report, in which the GAL opined that mother's home was "chaotic," that "[K.D.D.F.]'s education [wa]s better served by being in [father]'s care and custody," that "safety [wa]s a concern" in mother's home, and that it was "in [K.D.D.F.]'s best interests to be in the full physical custody of her father." The petition was filed in a juvenile protection proceeding, in which "[t]he paramount consideration" was K.D.D.F.'s "health, safety, and best interests." *See* Minn. Stat. § 260C.001, subd. 2(a). Accordingly, we "liberally construe[]" father's pleading obligations, *see id.*, subd. 4, and conclude that the juvenile court did not abuse its discretion in determining that father's amended permanency petition states a prima facie case for transfer of permanent custody.

## II. The juvenile court did not err by transferring permanent legal and physical custody of K.D.D.F. to father.

### A. The evidence

"Except as otherwise provided by statute or the[ R]ules [of Juvenile Protection Procedure], in a juvenile protection matter the court shall only admit evidence that would be admissible in a civil trial pursuant to the Minnesota Rules of Evidence." Minn. R. Juv.

Prot. P. 3.02, subd. 1; *see also* Minn. Stat. § 260C.163, subd. 1(a) (2014) (providing that "[i]n all adjudicatory proceedings regarding juvenile protection matters under . . . [chapter 260C], the court shall admit only evidence that would be admissible in a civil trial"). "The decision whether to admit or exclude evidence is discretionary with the district court. A district court abuses its discretion if it improperly applies the law." *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 93 (Minn. App. 2012) (citation omitted).

Mother attacks the juvenile court's consideration of evidence that "[b]etween January 1, 2010, and March 20, 2014, [SWHHS] had received 55 different intake reports" and "had initiated approximately 16 different workgroups involving [mother] and her home." Mother argues that evidence of "mere unadjudicated allegations and contacts with [SWHHS]" prior to K.D.D.F.'s removal from mother's home was inadmissible as "evidence of [mother]'s character" or otherwise and, thus, should not have been considered by the juvenile court.

But "[b]efore making a disposition in a case, . . . the court may consider *any* report or recommendation made by the responsible social services agency . . . [or the] guardian ad litem, . . . or any other information deemed material by the court." Minn. Stat. § 260C.193, subd. 2 (2014) (emphasis added). Here, the GAL and a social worker from SWHHS—the responsible social services agency—testified about SWHHS's many pre-removal contacts with mother. The juvenile court was entitled to consider that testimony as part of the "report or recommendation" of statutorily identified persons and/or as "other information deemed material by the court." *See* Minn. Stat. § 260C.193, subd. 2.

8

Furthermore, a juvenile court "may take judicial notice . . . of findings of fact and court orders in the juvenile protection court file and in any other proceeding in any other court file involving the child or the child's parent or legal custodian." Minn. R. Juv. Prot. P. 3.02, subd. 3. In this case, the juvenile court took judicial notice of the CHIPS file without objection. The CHIPS file contains, among other things, the March 2014 CHIPS petition and emergency protective care order. The CHIPS petition "incorporate[s] by reference as if fully set forth [t]herein" an SWHHS report that documents the pre-removal intakes and workgroups. The emergency protective care order, in turn, "adopts as its findings and incorporates . . . by reference the statements made in the [CHIPS] petition." As a result, even if evidence of the intakes and workgroups was not admissible under Minn. Stat. § 260C.193, subd. 2, documentary evidence of the intakes and workgroups was properly before the court by way of judicial notice.

Mother argues that evidence of pre-removal intakes and workgroups, even if otherwise admissible, was used improperly as evidence of mother's character. We reject mother's character-evidence argument as both undeveloped and unpersuasive.

> "Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Minn. R. Evid. 404(b). Evidence of the history of intakes and workgroups involving mother and her home may have been used properly to show that mother has a longstanding pattern of engaging in, and failing to durably correct, questionable conduct

9

with regard to her children. *Cf. Ray v. Miller Meester Adver., Inc.*, 664 N.W.2d 355, 364 (Minn. App. 2003) (noting that "Rule 404(b) provides that character-type evidence may be admissible for a relevant purpose other than showing conduct in conformity with a party's character trait to show, for example, . . . a pattern"), *aff'd*, 684 N.W.2d 404 (Minn. 2004). Such a pattern is relevant to mother's "ability to use services to correct the conditions which led to the out-of-home placement," which was directly at issue in the permanency proceeding. *See* Minn. Stat. § 260C.517(a) (2014). Mother has failed to show that the juvenile court erred in considering evidence of the pre-removal intakes and workgroups.

Mother's brief also contains three sentences that ostensibly answer the question whether the juvenile court erred by considering evidence submitted after the adjudicatory hearing. Mother notes that the TLC order "cited a guardian ad litem report" that "was submitted after the conclusion of evidence," and she incorporates by reference another three-sentence section of her brief, which section does not support an untimely-evidence argument. Mother's passing argument regarding the court's reliance on post-hearing evidence likely is waived. *See Brodsky v. Brodsky*, 733 N.W.2d 471, 479 (Minn. App. 2007) (stating that "[a] party who inadequately briefs an argument waives that argument").

Regardless, mother's untimely-evidence argument fails. The juvenile court's consideration of the GAL's second informal report was authorized by the statute expressly providing that "the court may consider *any* report or recommendation made by the . . . guardian ad litem . . . ." Minn. Stat. § 260C.193, subd. 2 (emphasis added). Even

if it was not so authorized, the court's consideration of the report is not reversible error, because it did not prejudice mother. *See J.K.T.*, 814 N.W.2d at 93 (stating that "[a] new trial may be granted on the basis of an improper evidentiary ruling only if the appellant demonstrates prejudicial error"). The only information from the report that the court mentioned in the TLC order is that mother had been evicted from her home and had moved to a different city. The court's related finding that "[mother's] living arrangements remain precarious" is independently supported by testimony that, as of October 2014, mother owed $2,333 in back rent, late fees, and utilities, despite asking for and receiving financial help from SWHHS in or about March 2014. Because this testimonial evidence is sufficient to support the precarious-housing finding, the court's consideration of post-hearing evidence is not prejudicial error. *See id.* (stating that "[a]n evidentiary error is not prejudicial if the record contains other evidence that is sufficient to support the findings").

## B. Permanency findings

On appeal of a juvenile-protection order, we review the juvenile court's factual findings for clear error and its finding of a statutory basis for the order for abuse of discretion. *Cf. In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 900–01 (Minn. App. 2011) (stating that "we will review the district court's findings of the underlying or basic facts for clear error, but we review its determination of whether a particular statutory basis for involuntarily terminating parental rights is present for an abuse of discretion," and noting that "[t]he concept that findings of basic or underlying fact are reviewed for clear error while 'ultimate facts' and 'mixed questions of law and fact' . . . are reviewed

11

for an abuse of discretion is . . . inherent in juvenile-protection caselaw"), *review denied* (Minn. Jan. 6, 2012). "A finding is clearly erroneous only if there is no reasonable evidence to support the finding or when an appellate court is left with the definite and firm conviction that a mistake occurred." *In re Welfare of J.H.*, 844 N.W.2d 28, 35 (Minn. 2014) (quotation omitted). "A district court abuses its discretion if it improperly applies the law." *J.K.T.*, 814 N.W.2d at 93.

The juvenile-protection provisions of the Juvenile Court Act state:

> Except for an order terminating parental rights, an order permanently placing a child out of the home of the parent . . . must include the following detailed findings:
>
> (1) how the child's best interests are served by the order;
> (2) the nature and extent of the responsible social services agency's reasonable efforts . . . to reunify the child with the parent . . . where reasonable efforts are required;
> (3) the parent's or parents' efforts and ability to use services to correct the conditions which led to the out-of-home placement; and
> (4) that the conditions which led to the out-of-home placement have not been corrected so that the child can safely return home.

Minn. Stat. § 260C.517(a); *accord* Minn. R. Juv. Prot. P. 42.05, subd. 1. Each of the four statutory findings must be proved by clear and convincing evidence. *See* Minn. R. Juv. Prot. P. 39.04, subd. 2(a) (providing that, "in a termination of parental rights or other permanency matter involving a non-Indian child, the standard of proof is clear and convincing evidence"). In this case, mother assigns error to the juvenile court's statutory findings that "[t]he efforts on the part of [SWHHS] to reunify [K.D.D.F.] with [mother]

have been reasonable" and that those "reasonable efforts . . . have failed to correct the conditions such that [K.D.D.F.] can safety return to [mother]'s home."

"Reasonable efforts . . . for . . . reunification are always required except upon a determination by the court that a petition has been filed stating a prima facie case that . . . the provision of services or further services for the purpose of reunification is futile." Minn. Stat. § 260.012(a) (2014). Here, the juvenile court found that SWHHS made the following efforts to reunite mother and K.D.D.F.:

> (a) establishment of home-based family therapy in [mother]'s home as well as that of [father];
> (b) establishment and assistance in the facilitation of a visitation schedule between [K.D.D.F.] and [mother];
> (c) monitoring of [K.D.D.F.]'s safety and progress in both homes;
> (d) provision of financial assistance in the form of rent assistance, transportation assistance, and provision of gas cards to [mother];
> (e) individual counseling for [K.D.D.F.]; and,
> (f) home visits to observe interaction between each parent and [K.D.D.F.].

Mother does not challenge these findings of underlying fact, which are supported by the record.

Based on the underlying facts, the juvenile court found that "[t]he efforts on the part of [SWHHS] to reunify [K.D.D.F.] with [mother] have been reasonable." Mother attacks this statutory finding by arguing that the efforts were not reasonable because they were not directed to remedying "the specific adjudicated condition[]" that led to K.D.D.F.'s removal from mother's home. But mother does not articulate *how* the reunification efforts failed to address the adjudicated condition that K.D.D.F.'s

13

environment was such as to be injurious or dangerous to her. Indeed, every one of SWHHS's efforts—with the possible exception of its provision of services in father's home—could have helped mother to correct the injurious or dangerous nature of K.D.D.F.'s environment in mother's home. The reasonable-efforts finding was not an abuse of discretion.

The juvenile court also found that "the conditions" have not been corrected "such that [K.D.D.F.] can safely return to [mother]'s home." Mother argues that the juvenile court abused its discretion by basing that statutory finding on conditions that were alleged for the first time in the permanency proceeding, asserting that "two conditions . . . formed the basis for [K.D.D.F.]'s removal from [mother]: (1) criminal activity in [mother]'s home; and (2) the condition of [mother]'s home." Mother's argument is unpersuasive.

Mother confuses the conditions which led to K.D.D.F.'s out-of-home placement, *see* Minn. Stat. § 260C.517(a)(3)-(4), with the factual bases for those conditions. Mother attempts to characterize the statutory grounds for out-of-home placement as identical to the factual support for those grounds. But many statutory grounds for out-of-home placement may be supported by a variety of mutable facts. For example, a child may be removed from her home on the statutory ground that she "is a sexually exploited youth." *See* Minn. Stat. §§ 260C.007, subd. 6, .201, subd. 1(a). The child's condition as a sexually exploited youth could have any one of several factual bases: she may be alleged to have been hired to engage in sexual conduct, or she may be a victim of criminal sexual conduct, child pornography, or sex trafficking. *See* Minn. Stat. § 260C.007, subd. 31 (2014). The child's condition as a sexually exploited youth is not corrected until *none* of

14

those factual bases is present. Even if the parent eliminates the factual bases that existed at the time of the child's removal, if a new factual basis arises after removal, the condition cannot be corrected until that new factual basis also has been eliminated.

In this case, the condition that led to K.D.D.F.'s removal from mother's home was that K.D.D.F.'s environment was such as to be injurious or dangerous to her. At the time of removal, the factual bases for that condition were (1) the presence in mother's home of controlled substances, paraphernalia, and/or drug users or other criminals; and (2) the home's state of poor repair. After the adjudicatory hearing, the juvenile court made the following findings of underlying fact:

> 13. [K.D.D.F.] has a history of problems regulating her emotions. When she becomes worried or anxious she displays disorganized behaviors.
>
> 14. [K.D.D.F.]'s symptoms are exaggerated by chaos introduced within her daily routine. [K.D.D.F.] needs safety and security in order to settle and focus.
>
> . . . .
>
> 23. . . . [Photographs] evidence conditions [of mother's home] that remain concerning. Testimony from [mother's property manager] evidences precarious financial circumstances. As of the date of hearing [mother] owed late rent plus fees. . . .
>
> . . . .
>
> 34. . . . [Mother] has no employment, no driver's license, and no vehicle. She has missed two supervised visits with [K.D.D.F.].
>
> . . . .

15

43. ... [K.D.D.F.]'s behaviors appear to escalate following visits to the home of [mother].

. . . .

52. While [mother] has corrected the primary basis for removal (selling controlled substances in the presence of children), her living arrangements remain precarious. [K.D.D.F.], due to special needs, is in need of stability and proficient parenting, neither of which are consistently provided by [mother].

. . . .

56. [An SWHHS social worker] testified at hearing that . . . she would have safety concerns for [K.D.D.F.] if returned to her mother's home; and, that [K.D.D.F.]'s anxieties would likely increase if placed back in [mother's] home. The Court finds this testimony credible.

Those findings of underlying fact are supported by the record and show at least two factual bases for the continuing condition that K.D.D.F.'s environment was such as to be injurious or dangerous to her: (1) mother's inability to provide a stable, properly maintained home for K.D.D.F.; and (2) K.D.D.F.'s receipt of inadequate or inappropriate parenting in mother's home. That the factual bases for the condition at the time of the adjudicatory hearing were not identical to the factual bases for the condition at the time of removal does not undermine the juvenile court's statutory finding that the overall condition had not been corrected, even if one or both of the time-of-removal factual bases had been corrected. The uncorrected-conditions finding was not an abuse of discretion.

Finally, mother argues that the juvenile court violated her right of procedural due process by (1) making "reasonable efforts findings that spawn from an unadjudicated condition," (2) considering evidence of pre-removal intakes and workgroups, and/or

16

(3) considering post-hearing evidence. Mother does not attempt to explain how her right to be heard was restricted at the adjudicatory hearing, at which mother was both personally present and represented by counsel who called favorable witnesses—including mother herself—and cross-examined adverse witnesses. And mother does not otherwise develop any of her due-process arguments. Consequently, we do not address them. *See Brodsky*, 733 N.W.2d at 479 (stating that "[a] party who inadequately briefs an argument waives that argument").

We reject any suggestion by mother that this opinion will invite the use of juvenile-protection proceedings to circumvent the requirements for custody modification under Minn. Stat. § 518.18(d) (2014). "The current juvenile court act contains numerous provisions that allow relatives and private parties to seek permanent legal and physical custody of children in CHIPS and permanency proceedings." *Stern v. Stern*, 839 N.W.2d 96, 104 (Minn. App. 2013). Indeed, those provisions are a custody-seeker's only recourse while juvenile-protection proceedings are ongoing. *See id.* at 101, 104 & n.7 (concluding that family court does not have concurrent jurisdiction with juvenile court "relative to issues over which the juvenile court has original and exclusive jurisdiction," including custody issues). And a custody-seeker's burden is greater in juvenile court than in family court. *See* Minn. R. Juv. Prot. P. 39.04, subd. 2(a) (providing that, "in a termination of parental rights or other permanency matter involving a non-Indian child, the standard of proof is clear and convincing evidence"); *In re A.R.M.*, 611 N.W.2d 43, 49 n.2 (Minn. App. 2000) (noting that "[m]odification of custody under chapter 518 . . . requires only a preponderance of the evidence"). Similarly, "it is procedurally more complex to obtain a

17

CHIPS adjudication under chapter 260C than to modify custody under chapter 518." *A.R.M.*, 611 N.W.2d at 49 n.2. As we have stated previously, "[u]nder these circumstances, our ruling will not cause a deluge of litigation seeking to finesse the child-custody modification standard of chapter 518." *Id.*

## DECISION

Because the juvenile court made no prejudicial errors in its consideration of the evidence, and because its permanency findings reflect no abuse of discretion, the juvenile court did not err by transferring permanent legal and physical custody of K.D.D.F. to father.

**Affirmed.**