*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1857**

In the Matter of the Welfare of the Children of: D. O., Parent.

**Filed May 23, 2016
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27JV15485

Mary F. Moriarty, Chief Hennepin County Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, Minnesota (for appellant D.O.)

Michael O. Freeman, Hennepin County Attorney, Michelle A. Hatcher, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

DeAundres Wilson, Wilson Law Office, P.A., Minneapolis, Minnesota (for father)

Jeffrey P. Justman, Faegre Baker Daniels, Minneapolis, Minnesota (for guardian ad litem)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellant-mother challenges the termination of her parental rights, arguing that the district court abused its discretion by determining that the county made reasonable efforts to rehabilitate her and reunite the family, that there is a statutory ground for termination, and that the termination is in the children's best interests. We affirm.

## FACTS

D.O. is the mother of four children. Her two youngest children, D.W.P, born in 2002, and R.C.P., born in 2008, (the children) are the subjects of this action.[1] Her two older children are no longer in her custody. One child was transferred to the custody of her father, and the other child is an adult. D.O. was sexually abused by her father from ages 7 to 22 and was physically abused by her mother her "whole life." She has been diagnosed with post-traumatic stress disorder (PTSD) and antisocial personality disorder. D.O. also has a history of chemical dependency. She has used marijuana daily since she was eight-years-old.

In 2002, D.O., D.W.P., and D.O.'s two older children moved in with D.O.'s mother and father. In 2008, D.W.P. told his school that his grandfather was sexually abusing him and the two older children. Child protective services removed all three children from D.O.'s custody. R.C.P., who was born shortly after the case was opened, was also removed from D.O.'s custody directly from the hospital. After successful completion of a case plan, D.O. was reunified with the children, and the case was closed in 2009.

In 2012, the children went to live with their father, W.P. At trial, D.O. testified that D.W.P. "wanted to go stay with his father for a period of time." W.P. testified that D.O. "said she just wanted a break" and "needed to get away." Although D.O. lived in

---

[1] The parental rights of D.W.P.'s and R.C.P.'s father were voluntarily terminated at trial on August 18, 2015, and are not at issue on appeal.

the same area as the children, she saw the children only three times during the year and a half that they lived with W.P.

In November 2013, child protective services received a report that W.P. had physically abused R.C.P. by hitting him with a backscratcher. At this time, D.O. did not have stable housing and was staying with a friend. The district court adjudicated the children in need of protection or services and granted Hennepin County Human Services and Public Health Department (the county) temporary legal custody of the children.

When the children were removed from W.P.'s home, they had mental- and behavioral-health issues and were developmentally behind children of a similar age. D.W.P. was three grades behind and R.C.P. was having tantrums in school. Both children were diagnosed with PTSD and attention-deficit hyperactivity disorder. R.C.P. was also diagnosed with adjustment disorder. The county removed the children from their schools and placed them in daytime treatment programs where they received therapy and education to address their special needs. They were also placed together in a non-relative foster home.

The county developed a case plan for D.O. that identified family needs, including housing, parenting skills, and counseling or therapy for mental and chemical-use issues. Among other services, the county provided parenting education, chemical-dependency services, and mental-health services to D.O. D.O. participated in three different chemical-dependency treatment programs. However, one program gave her a poor prognosis and another asked her to leave their aftercare program due to positive

3

urinanalysis tests (UAs) and lack of compliance. D.O. has recently started attending individual therapy, but does not do so on a regular basis.

In March 2014, the children returned to D.O. for a trial home visit. In September, during the visit, D.O. took the children and absconded to Arizona with the intention of living there permanently. D.O. did not inform the county or any of the service providers that she and the children were leaving. In Arizona, D.O. and the children were living with one of D.O.'s friends, the children were not in school, and D.O. did not have a job. The county eventually located the children and returned them to Minnesota where they were placed into out-of-home placement. D.O. was criminally charged with and pleaded guilty to felony deprivation of custodial rights.

In January 2015, the county filed a petition to terminate D.O.'s parental rights, alleging that: (1) D.O. abandoned the children; (2) D.O. refused or neglected to comply with the parental duties imposed by the parent and child relationship; (3) reasonable efforts failed to correct the conditions leading to the out-of-home placement; and (4) the children are neglected and in foster care. On August 18, 2015, a court trial was held. W.P., D.O., a child-protection-services worker (CPS worker) from the county, and the children's guardian ad litem (GAL) testified.

D.O. testified that she "believes that a parent that smokes marijuana [can] care for their child," and when asked if she sees "any issues with [her] parenting when [she] is using marijuana," she said no. She testified that she dislikes therapists and, despite her past experiences adversely affecting her life, she disagreed that therapy was "beneficial

4

for [her] as a parent." She also testified that she is currently residing in an aftercare treatment facility that will not allow the children to reside with her.

The CPS worker testified that D.O. has not made the progress necessary for her to be reunified safely with the children, because she does not have safe and stable housing, she was asked to leave one of her aftercare treatment programs, and she continues to have positive UAs. She testified that, given the length of time the children have been out of home and the number of services that have already been provided to D.O., she is not sure what else the county could offer. She also testified that the "children deserve permanency" and "the children needing a safe, stable, secure, home, is in the [county's] view the best interest for the children."

The GAL, who has been working with the children since 2008, testified that this case has gone on "an extreme length of time with as many options for service than any other case that [she's] ever been involved in." She had hoped that reunification would be possible, but believes it is not "practical" at this point. She testified that she does not believe that D.O. currently has the capacity to parent, to meet the children's needs, nor will she be able to parent in the reasonably foreseeable future. She also testified that, in her opinion, termination of parental rights is appropriate so the children can have a safe and stable environment "where their needs are continually met."

Following the trial, the district court terminated D.O.'s parental rights to the children. The district court determined that the county made reasonable efforts to rehabilitate D.O. and to reunite her with the children, three statutory grounds for

5

termination were met, and termination of D.O.'s parental rights is in the children's best interests. D.O. appeals.

## D E C I S I O N

"[P]arental rights may be terminated only for grave and weighty reasons." *In re Welfare of Child of W.L.P.*, 678 N.W.2d 703, 709 (Minn. App. 2004). Termination requires clear and convincing evidence that (1) the county has made reasonable efforts to rehabilitate the parent and reunite the family, (2) there is at least one statutory ground for termination, and (3) termination is in the child's best interests. *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). On appeal, we review a district court's "determination of whether a particular statutory basis for involuntarily terminating parental rights is present for an abuse of discretion." *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012). We review the district court's factual findings "to determine whether they address the statutory criteria for termination and are not clearly erroneous, in light of the clear-and-convincing standard of proof." *In re Welfare of Children of K.S.F.*, 823 N.W.2d 656, 665 (Minn. App. 2012) (citation omitted).

A finding is clearly erroneous if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Welfare of Children of T.R.*, 750 N.W.2d 656, 660-61 (Minn. 2008) (quotation omitted). The "district court's individual fact findings will not be set aside unless our review of the entire record leaves us with a definite and firm conviction that a mistake has been made." *In re Welfare of D.T.J.*, 554 N.W.2d 104, 107 (Minn. App. 1996) (quotation omitted).

**I.     The district court did not err in determining that the county made reasonable efforts to rehabilitate D.O. and to reunite the family.**

D.O. argues that the district court erred in determining that the county made reasonable efforts to rehabilitate her and reunite her with the children. We disagree.

In every proceeding to terminate parental rights, the district court must make "specific findings" that the county made reasonable efforts to rehabilitate the parent and to reunite the family. Minn. Stat. § 260C.301, subd. 8 (2014). "When determining whether reasonable efforts have been made," the district court must consider "whether services to the child and family were: (1) relevant to the safety and protection of the child; (2) adequate to meet the needs of the child and family; (3) culturally appropriate; (4) available and accessible; (5) consistent and timely; and (6) realistic under the circumstances." Minn. Stat. § 260.012(h) (2014). "Reasonable efforts at rehabilitation are services that go beyond mere matters of form so as to include real, genuine assistance." *In re Welfare of Children of S.W.*, 727 N.W.2d 144, 150 (Minn. App. 2007) (quotations omitted), *review denied* (Minn. Mar. 28, 2007).

The district court found that the county made reasonable efforts to rehabilitate D.O. and reunite her with the children because they offered services that were "timely, available, relevant, culturally appropriate" and "provided a meaningful opportunity to address the issues relevant to the foster care placement." These findings are supported by the record. At the time of termination, the county had provided almost two years of parenting education, chemical-dependency services, and mental-health services to D.O. In addition, trial had been delayed to extend these services. D.O. had participated in

three different chemical-dependency treatment programs and received referrals to at least three different therapists. She was also participating in parenting-skills classes. These services were in addition to the parenting education and chemical-dependency services the county had provided during D.O.'s previous involvements with the county. Therefore, the district court did not clearly err in determining that the county had provided reasonable efforts to rehabilitate D.O. and to reunite her with the children. *See* Minn. Stat. § 260.012(h).

D.O. argues that the county's services were not available or consistent because she was unable to contact the initial CPS worker, who was replaced by another worker only three months before trial, and the two workers never met to discuss the case. We are not persuaded. Although it is concerning that D.O. had trouble contacting the initial worker, she had many other service providers, put in place by the county, that were available to her. D.O. testified that, after she was unable to contact the initial worker, she did not attempt to contact the GAL or her attorney. In addition, the second worker testified that when she took the case over she reviewed the previous notes and files, and consulted with her supervisor regarding the history of the case. She also testified that she is trained to take over a case without discussing it with the previous worker.

D.O. also argues that her aftercare treatment program was inadequate because the programming was insufficient and because the children were not allowed to live with her at the facility. Again, we are not persuaded. The record supports the district court's view that the problem is not the services being offered, but that D.O. does not think she has a chemical-dependency problem and is not fully committed to the services being provided.

8

D.O. testified that she does not believe her marijuana use affects her ability to parent and that the only reason she needs to stop using marijuana is because it is the only way she will get the children back. In addition, D.O. is in her current aftercare treatment program because she was asked to leave her previous aftercare treatment program due to positive UAs and noncompliance. The record supports the district court's finding that the county made reasonable efforts.

**II.     The district court did not abuse its discretion in determining that at least one of the statutory grounds for termination had been met.**

D.O. argues that the district court abused its discretion in determining that at least one of the statutory grounds for termination had been met. We disagree.

Minn. Stat. § 260C.301, subd. 1(b) (2014) sets forth nine statutory grounds for an involuntary termination of parental rights. The district court determined that three of those grounds were met here: (1) D.O. failed to comply with her duties under the parent and child relationship under subdivision 1(b)(2); (2) reasonable efforts have failed to correct the conditions leading to the children's placement under subdivision 1(b)(5); and (3) the children are neglected and in foster care under subdivision 1(b)(8). To affirm the district court's termination of parental rights, only one of these statutory grounds needs to be supported by clear and convincing evidence. *See In re Welfare of Children of R.W.*, 678 N.W.2d 49, 55 (Minn. 2004).

A statutory basis for terminating parental rights exists under section 260C.301, subdivision 1(b)(5), when "reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the child's [out-of-home] placement." It is

9

presumed that reasonable efforts have failed upon a showing that: (1) a child over age eight has resided outside the parental home for a cumulative period of 12 months within the preceding 22 months; (2) "the court has approved the out-of-home placement plan"; (3) the conditions leading to a child's out-of-home placement have not been corrected; and (4) "reasonable efforts have been made by the social services agency to rehabilitate the parent and reunite the family". Minn. Stat. § 260C.301, subd. 1(b)(5). It is also presumed that the conditions leading to out-of-home placement have not been corrected upon a showing that a parent has "not substantially complied with the court's orders and a reasonable case plan." *Id.,* subd. 1(b)(5)(iii).

D.O. only challenges the last two elements of the presumption of subdivision 1(b)(5). Because we have already discussed the fourth element and concluded that the record supports the district court's finding that the county made reasonable efforts, we only address the third element here.

The district court found that the conditions that led to the children's out-of-home placement had not been corrected. Specifically, the district court found that, while D.O. had "made some efforts on case plan services," she "failed to comply with her case plan" and that the issues present when the case was first opened are still present nearly two years later. These findings are supported by the record. Despite participating in three chemical-dependency treatment programs, D.O. testified that she does not believe that smoking marijuana affects her ability to parent or care for her children. She has failed at least six UAs since she left her inpatient treatment program and used marijuana shortly before the termination trial. D.O. also has not addressed her mental-health issues. She

10

does not attend individual therapy on a regular basis and she testified that she does not believe that addressing her past with a therapist would be beneficial for her as a parent. Further, D.O. has not demonstrated that she can care for the children's needs. During the trial home visit, D.O. removed the children from their daytime treatment programs and absconded to Arizona with them. In Arizona, they did not have stable housing, and the children were not attending school.

The CPS worker's testimony indicates that D.O. complied with some aspects of her case plan. For example, D.O. was "cooperative" in her parenting-skills classes, attended "some" meetings with the staff at D.W.P's daytime treatment program, and attended weekly visits with the children. But complying with some aspects of the case plan alone is not the same as substantially complying with the plan. *See id.* Therefore, the district court did not clearly err in determining that D.O. failed to correct the conditions that led to the children's out-of-home placement. *See id.*, subd. 1(b)(5).

D.O. further argues that the condition that led to the children's out-of-home placement was physical abuse by W.P. and, because W.P. is no longer in their lives, she has successfully rebutted the presumption of subdivision 1(b)(5). We are not persuaded. Although the children were initially taken from W.P.'s home due to the physical abuse, there were other conditions that led to their out-of-home placement, including D.O.'s chemical dependency, her lack of safe and stable housing, and her inability to care for the children's special needs. *See In re Welfare of Child of D.L.D.*, 865 N.W.2d 315, 324 (Minn. App. 2015) ("That the factual bases for the condition at the time of the adjudicatory hearing were not identical to the factual bases for the condition at the time

11

of removal does not undermine the juvenile court's statutory finding that the overall condition had not been corrected, even if one or both of the time-of-removal factual bases had been corrected."), *review denied* (Minn. July 21, 2015). At the time the children were taken from W.P.'s home, D.O. was staying with a friend. Although D.O. expressed an interest in having the children, the children were adjudicated as children in need of protective services, and the county developed a case plan for her, which included parenting education and chemical-dependency services. The district court did not abuse its discretion by determining that the statutory ground for termination under subdivision 1(b)(5) exists. *See id.*, subd. 1(b)(5).

Because we conclude that one ground for termination exists, we need not analyze the other grounds found by the district court. *See R.W.*, 678 N.W.2d at 55.

III. **The district court did not abuse its discretion in determining that termination was in the children's best interests.**

D.O. argues that the district court abused its discretion in determining that termination was in the children's best interests. We disagree.

After determining that one of the statutory grounds for termination of parental rights has been met, "the best interests of the child must be the paramount consideration." Minn. Stat. § 260C.301, subd. 7 (2014). "In analyzing the best interests of the child, the court must balance three factors: (1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interest of the child." *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992). The child's competing interests include "a stable environment, health

12

considerations and the child's preferences." *Id.* "Where the interests of parent and child conflict, the interests of the child are paramount." Minn. Stat. § 260C.301, subd. 7 (2014). We review a "determination that termination is in a child's best interest[s] for an abuse of discretion." *J.R.B.*, 805 N.W.2d at 905.

The district court found that D.O. had an interest in preserving the parent-child relationship, but that the children do not. The record supports these findings. Although the GAL testified that D.W.P. once stated that he wanted to live with his mother, she also testified that later he did not state a definite preference of where he wanted to live. In addition, the GAL testified that D.W.P. talked more about being safe now than when the case first opened.

The district court also found that the children's "need for stability, security and safety, as well as having their special needs met, overrides any interest in maintaining a parent-child relationship." The record supports this finding. Both the CPS worker and the GAL, who worked extensively with the family for the past six years, testified that, despite the time and number of services D.O. was provided, D.O. has not made the progress necessary for reunification and that termination is in the best interests of the children. The GAL also testified that D.O. cannot meet the children's needs at this time and that the children have benefitted from their stable out-of-home placement. Therefore, the record supports the district court's best-interests findings.

D.O argues that: (1) the district court relied too heavily on evidence of past behavior instead of current evidence, which did not support termination; (2) the children's relationship with her, as demonstrated by her time with the children, did not

13

support a finding that termination was in the best interests of the children; and (3) there were no competing interests between her desire to parent and the children's interest in maintaining the parent-child relationship. We are not persuaded. First, the district court did not rely too heavily on evidence of past behavior. In its order, the district court made extensive findings of fact regarding the children's best interests and only briefly mentioned D.O.'s past behaviors. Further, the district court's use of D.O.'s past patterns of behavior to determine future patterns of behavior was appropriate. *See In re Welfare of S.Z.*, 547 N.W.2d 886, 893-94 (Minn. 1996) (discussing parent's history of mental illness as it relates to the parent's current and future ability to parent). Second, although there is evidence in the record that D.O. had positive interactions with the children during visitations and that D.O. loves the children, there is also evidence that D.O. cannot meet the children's needs. The GAL testified that the children need and have benefitted from stability and that D.O. is not able to provide this to them. The district court did not abuse its discretion by determining that the termination of D.O.'s parental rights is in the children's best interests.

     **Affirmed.**